IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>    Plaintiff, | MEMORANDUM DECISION AND ORDER |
| ANDREA LIENDER,<br>    Plaintiff-Intervenor,<br><br>    vs. | |
| BODY FIRM AEROBICS, INC., d/b/a GOLD'S GYM,<br><br>    Defendant. | Case No. 2:03 CV 846 TC |

The Equal Employment Opportunity Commission filed this discrimination case against Defendant Body Firm Aerobics, Inc. under Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991.  The EEOC claims that Body Firm, a corporation that owns and manages certain Gold's Gyms in the State of Utah, subjected Andrea Liender "and a class of female employees to a hostile work environment due to sexual harassment and gender-based harassment." (Complaint 3.)  The Complaint also alleges that Body Firm retaliated against Ms. Liender after Ms. Liender voiced her concerns to supervisors, culminating in Ms. Liender's constructive discharge.  (Id. at 4.)  A short time after the EEOC filed its Complaint, Ms. Liender moved to intervene and filed her own complaint in intervention.

The Complaint filed by the EEOC also alleges that Body Firm discriminated against Erin Allen, another former employee of Body Firm, by demoting her after learning she was pregnant.

(Id. at 4-5.)  According to the Complaint, actions taken by Body Firm against Ms. Allen resulted in her constructive discharge.  (Id. at 5.)

This matter is before the court for the resolution of several pending motions.  Body Firm has moved for summary judgment on the EEOC's claims that Body Firm retaliated against Ms. Liender, discriminated against Ms. Allen, and constructively discharged both women.  Cross-motions for summary judgment have been filed on the issue of whether punitive damages are appropriate in this case.  Ms. Liender has filed additional summary judgment motions.  The first seeks to preclude Body Firm from relying on the "good faith" affirmative defense to sexual harassment claims that was established by the United States Supreme Court in the companion cases of Burlington Industries, Inc. v. Ellerth, 524 U.S. 742 (1998), and Faragher v. City of Boca Raton, 524 U.S. 775 (1998).  The second requests an order holding that several gyms in addition to those that were undisputedly owned by Body Firm during the relevant time period, as well as the different corporate entities owning and operating those additional gyms, are a single employer for the purposes of this lawsuit.

A few days before the hearing on these matters, the parties submitted various filings seeking to augment the record and also filed multiple evidentiary motions, urging the court to strike evidence.  At the eleventh hour, Ms. Liender requested a continuance pursuant to rule 56(f) of the Federal Rules of Civil Procedure to expand the time available to respond to Body Firm's summary judgment motion.  Despite the morass of evidentiary disputes and a series of filings that tend to obfuscate rather than crystalize material facts, the record does reveal significant agreement between the parties concerning the operative facts.

After reviewing the evidentiary record, relevant court filings, and after considering the oral argument offered by the parties, the court grants Body Firm summary judgment on

Plaintiffs' claim that Body Firm retaliated against Ms. Liender and that Ms. Liender was constructively discharged.  But on the record before it, the court is unable to resolve any other matters.

### Standard Applicable to Summary Judgment Motions

Federal Rule of Civil Procedure 56 permits the entry of summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  Fed. R. Civ. P. 56(c);  see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-51 (1986); Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670 (10th Cir. 1998).  The court must "examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment."  Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient [to overcome a motion for summary judgment]; there must be evidence on which the jury could reasonably find for the plaintiff."  Liberty Lobby, 477 U.S. at 252.  See also Anderson v. Coors Brewing Co., 181 F.3d 1171, 1175 (10th Cir. 1999) ("A mere scintilla of evidence supporting the nonmoving party's theory does not create a genuine issue of material fact.").

"Summary judgment is a drastic remedy [and] and any relief pursuant to Fed. R. Civ. P. 56 should be awarded with care."  Conaway v. Smith, 853 F.2d 789, 792 n.4 (10th Cir. 1988) (citing Jones v. Nelson, 484 F.2d 1165, 1168 (10th Cir. 1973)).  "Unless the moving party can demonstrate his entitlement beyond a reasonable doubt, summary judgment must be denied."  Id. (citing Norton v. Liddel, 620 F.2d 1375, 1381 (10th Cir. 1980)).

**Background**

In light of the standard governing summary judgment motions, the following factual

exposition is largely confined to material that the parties do not dispute.  Any disputed facts, or

facts derived from challenged evidentiary sources, will be identified as such and will either be

disregarded as inadmissible or resolved in favor of the nonmoving party when analyzing the

pending motions for summary judgment.

I.      **Ms. Liender and Body Firm**

In 1999 Ms. Liender began teaching aerobics classes for Body Firm, which owned and

operated at least two Gold's Gym franchises in the Provo-Orem area.  In April of 2000, Ms.

Liender was also given the position of office manager for Body Firm.

In 2000, Body Firm's operations were growing.  At the recommendation of the national

Gold's Gym organization, Body Firm hired Robert Littlebrant to serve as chief operations officer

beginning November 1, 2000.  Body Firm also hired Mr. Littlebrant's wife, Mary, who

ultimately managed sales.  After taking the position of chief operations officer, Mr. Littlebrant

became Ms. Liender's supervisor.

Ms. Liender alleges that, over the course of the ensuing months, Mr. Littlebrant made

inappropriate comments and engaged in inappropriate behavior in the work environment.  The

parties dispute the accuracy and appropriate characterization of many of Ms. Liender's

allegations.  But, because the merits of Ms. Liender's sexual harassment claim are not directly at

issue in the pending motions, only a general description of those allegations is necessary.  Those

allegations include that Mr. Littlebrant (1) called her and other women "little girl," (2) made

inappropriate comments about a Halloween costume worn by Ms. Liender, (3) made

inappropriate comments about Ms. Liender's attire and physical appearance, (4) commented on

4

the physical appearance of a female customer, (5) praised a female employee's willingness to use sex appeal to make sales, (6) stood unnecessarily close to Ms. Liender when seeking help with a fax, and (7) behaved inappropriately when teaching Ms. Liender how to perform a certain exercise.

A.     *Ms. Liender Complains*

Ms. Liender alleges that on February 1, 2001, she approached Troy Peterson, an owner of Body Firm, and complained about Mr. Littlebrant's behavior.  Body Firm disputes that allegation.  But it is undisputed that on May 16, 2001, Ms. Liender complained to Mr. Peterson about Mr. Littlebrant and submitted a follow-up letter to Mr. Peterson on the same day, outlining many of her complaints.  Mr. Peterson discussed Ms. Liender's May 16, 2001 complaint with Mr. Littlebrant.

B.     *The Fallout*

Ms. Liender states that the work environment changed after she made her May 16, 2001 complaint.  Specifically, she claims that (1) Mr. Littlebrant told two of her coworkers not talk to her, (2) Ms. Littlebrant and another colleague began to ignore her, (3) Mr. Littlebrant wrote an interoffice memorandum criticizing Ms. Liender's job performance and indicated that she either needed to "buy into the deal" or move on to something else, (4) her job duties and her authority changed, and (5) Laura Aston, an aerobics supervisor, told her that she should either apologize to Mr. Littlebrant or leave Body Firm.  Ms. Liender alleges that the changes in her work environment were purposefully taken in an effort to retaliate against her for complaining about Mr. Littlebrant's behavior.

C.     *Ms. Liender Resigns*

After receiving the interoffice memorandum from Mr. Littlebrant on June 26, 2001, Ms.

Liender responded with her own memorandum dated July 5, 2001.  In that memorandum, Ms. Liender indicated her willingness to work with Mr. Littlebrant, defended her work performance, and expressed her belief that Mr. Littlebrant's memorandum was motivated by Ms. Liender's harassment complaints.

Five days later, on July 10, 2001, Ms. Aston, an aerobics supervisor, called Ms. Liender and expressed her opinion that Ms. Liender should either apologize or quit.  Ms. Liender resigned that same day.

## II.     Ms. Allen and Body Firm

Mr. Peterson hired Ms. Allen as a salesperson before Mr. Littlebrant's arrival.  At the time Mr. Peterson hired Ms. Allen, salespersons at Body Firm received a base salary plus commissions, with no guaranteed amount of compensation.  But Mr. Peterson guaranteed Ms. Allen a salary of $1800 per month.  If Ms. Allen's regular paycheck was less than $1800, she would notify Mr. Peterson, who would then write an additional check to bring her total payment up to the guaranteed rate.

*A.     Ms. Allen's Pregnancy and the Body Firm Task Force*

During the time she was employed at Body Firm, Ms. Allen became pregnant.  When her pregnancy became common knowledge, Ms. Littlebrant asked Ms. Allen how long she planned to work.  Ms. Allen responded that she was planning on working until Thanksgiving.  Ms. Littlebrant then asked Ms. Allen if she would be willing to perform work on a "task force" that Body Firm was creating to go through customer contracts to enter and update customer data.  Ms. Littlebrant told Ms. Allen that her hours would be more flexible if she worked with the task force.  Ms. Allen indicated that she would be happy to help out.

Ms. Allen began working on the task force on May 21, 2001.  At the time she started with

the task force, Ms. Allen believed, based on her conversations with Ms. Littlebrant, that her rate of pay would not be affected by her switch from the sales force to the task force.  But the Littlebrants claim that they did not know about Ms. Allen's salary guarantee agreement with Mr. Peterson at the time Ms. Allen moved to the task force.  Ms. Allen alleges that Body Firm hired a replacement for Ms. Allen on the sales force after she began working with the task force.  Ms. Allen was not paid her guaranteed amount while working with the task force, but received compensation at the rate of $6.50 per hour.

B.      *Ms. Allen Complains*

On May 31, 2001, a short time after she learned of her reduced pay, Ms. Allen states that she left a letter in Mr. Peterson's office explaining the situation and requesting that Body Firm reinstate her previously guaranteed rate of compensation.  In that letter, Ms. Allen indicated that she would perform whatever work was necessary to justify a return to her previous salary.  Body Firm contends that Mr. Peterson never received that letter.

C.      *The Situation Deteriorates*

On June 1, 2001, Ms. Allen had a conversation with Mr. Littlebrant about her pay.  Mr. Littlebrant stated his belief that Ms. Allen should not receive the rate of pay guaranteed by Mr. Peterson.  During that conversation, Mr. Littlebrant also expressed his concerns about Ms. Allen's punctuality and work attendance.  There are disputed facts concerning Ms. Allen's work attendance.  Specifically, Ms. Allen disputes that time cards produced by Body Firm accurately reflect the amount of time she spent at work.  Ms. Allen questions the information contained on the cards and also alleges that the cards do not serve as an accurate reflection of the number of hours she worked because there were times when she would not clock in or otherwise record her hours.

7

D.      *Ms. Allen's Employment with Body Firm Ends*

The day that Mr. Littlebrant and Ms. Allen discussed Ms. Allen's compensation and work attendance, Ms. Allen left work before her scheduled time.  Ms. Allen claims that she had the approval of her supervisor.  After learning of her early departure, Mr. Littlebrant informed Ms. Allen that she was to take no more time off her regular schedule without his permission.  A short time later, Ms. Allen's close friend died unexpectedly and Ms. Allen traveled to the State of Washington to attend funeral services.  Ms. Allen admits that she did not receive permission from Mr. Littlebrant before leaving, but claims that she was unable to reach him and that she did secure the approval of her immediate supervisor.

While in Washington, Ms. Allen spoke with Ms. Liender, her supervisor, on the phone.  Ms. Liender told Ms. Allen that Mr. Littlebrant was upset that she had left for the funeral without obtaining his permission and that Mr. Littlebrant was planning on firing Ms. Allen upon her return.  Ms. Allen never returned to Body Firm.

## Analysis

Body Firm requests summary judgment in its favor on the retaliation and constructive discharge claims of Ms. Liender and the disparate treatment and constructive discharge claims of Ms. Allen.  Additionally, Body Firm seeks a summary judgment holding that punitive damages are unavailable under the facts of this case.  Ms. Liender has filed a cross-motion for summary judgment on the issue of punitive damages.  Ms. Liender has also requested summary judgment precluding Body Firm from relying on the affirmative "good faith" defense available to employers that was recognized by the United States Supreme Court in Burlington Industries Inc., 524 U.S. 742, and Faragher, 524 U.S. 775.  Finally, Ms. Liender seeks summary judgment holding that additional gyms, as well as the corporate entities that own those gyms, beyond those

expressly owned and operated by Body Firm are so integrally related to Body Firm's operations that the all of the entities should be considered one employer for the purposes of this lawsuit. The court will address each issue in turn.

**I.      Body Firm Is Entitled to Summary Judgment on Ms. Liender's Retaliation Claim Because Ms. Liender Suffered No Actionable Retaliation**

Body Firm argues that Ms. Liender's retaliation claim must fail because Ms. Liender suffered no adverse employment action.  Viewing the facts in the light most favorable to Ms. Liender and the EEOC, the court is persuaded that Ms. Liender suffered no actionable retaliation and that Body Firm is entitled to summary judgment on this issue.

After the court took the present motions under advisement, the United States Supreme Court issued its opinion in Burlington Northern & Santa Fe Ry. Co. v. White, No. 05-259, 2006 WL 1698953 (June 22, 2006), which involved a Title VII retaliation claim.  Burlington makes clear that the anti-retaliation provision of Title VII "protects an individual not from all retaliation, but from retaliation that produces an injury or harm."  Id. at *10.  But the Court recognized that "the Courts of Appeals have used differing language to describe the level of seriousness to which . . . harm must rise before it becomes actionable retaliation."  Id.

In Burlington, the Court rejected attempts to limit actionable retaliatory actions to those actions that tangibly alter employment status.  See id.  Rather, a plaintiff need only "show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  Id. (internal quotation omitted).  As succinctly stated in Burlington: "Context matters."  Id. at 11.

Ms. Liender, claims that the following events constituted retaliation: (1) Mr. Littlebrant told two of her coworkers to not talk to her, (2) Ms. Littlebrant and another colleague began to

ignore her, (3) Mr. Littlebrant wrote an interoffice memorandum criticizing Ms. Liender's job performance and indicated that she either needed to "buy into the deal" or move on to something else, (4) her job duties and her authority changed, (5) Laura Aston, an aerobics supervisor told her that she should either apologize to Mr. Littlebrant or leave Body Firm.

Ms. Liender does not allege that Body Firm altered her job title, compensation, or benefits after she complained about Mr. Littlebrant's behavior.  This is consistent with Ms. Liender's own characterization of her deposition testimony "that . . . she was never overtly demoted."  (Memo. in Opp'n to Def.'s Mot. for Partial Summ. J. 4.)  But Ms. Liender argues that the facts outlined above, when considered together, support her retaliation claim.  Although Burlington establishes that an individual may suffer actionable retaliation even in the absence of tangible changes to employment status, the facts alleged by Ms. Liender are insufficient to establish actionable retaliation.

A.      *The Treatment of Ms. Liender by Her Colleagues*

Body Firm challenges the admissibility of critical evidence underlying Ms. Liender's allegations that she was shunned by coworkers after lodging her complaint.  But that issue need not be resolved, because the type of treatment alleged by Ms. Liender, even if based on admissible evidence, is insufficient to sustain a retaliation claim.

The Supreme Court indicated in Burlington that "petty slights, minor annoyances, and simple lack of good manners" are normally not considered materially adverse actions.  2006 WL 1698953 at *10.  In Burlington, the Court explicitly stated its agreement with the approach used by the District of Columbia and Seventh Circuits when determining whether a plaintiff has suffered actionable retaliation.  Id.  The Seventh Circuit has held that employee shunning is typically not a materially adverse action.  See Mlynczak v. Bodman, 442 F.3d 1050, 1061 (7th

Cir. 2006) ("The fact that co-workers may have shunned them is also insufficient."); Griffin v.

Potter, 356 F.3d 824, 830 (7th Cir. 2004) ("General hostility and comments do not qualify as

actionable adverse employment actions unless the hostility was severe and pervasive.")

Although Tenth Circuit precedent to date has focused on changes to an employee's

"status" when assessing retaliation claims, that precedent is largely harmonious with the Seventh

Circuit's approach to alleged mistreatment by co-workers.  See, e.g., MacKenzie v. City &

County of Denver, 414 F.3d 1266, 1279 (10th Cir. 2005) ("[W]ith regard to MacKenzie's claim

that Gourley's 'silent treatment' towards her was in retaliation for her filing a grievance against

him, we conclude mere passive treatment does not constitute an adverse employment action."

(citing Flannery v. Tran World Airlines, Inc., 160 F.3d 425, 428 (8th Cir. 1998)); Metcalf v.

Metropolitan Life, Inc., 961 F. Supp. 1536, 1544 (D. Utah 1997) ("Allegations that fellow

employees treated them 'almost contemptuously,' subjected them to 'isolation treatment,' and

publicly criticized their work performance without just cause 'fails to rise to the level of 'adverse

action by the employer.'" (quoting Beaver v. Prudential Ins. Co. of Am., No. 94-4181-DES,

1996 WL 109547, at *5 (D. Kan. Feb. 1, 1996)).

The Tenth Circuit has stated that co-worker hostility may support a retaliation claim "if

sufficiently severe."  Gunnell v. Utah Valley State College, 152 F.3d 1253, 1264 (10th Cir.

1998).  Although unpleasant, the type of shunning alleged by Ms. Liender was not severe enough

to meaningfully interfere with her "unfettered access to Title VII's remedial mechanisms,"

Burlington, 2006 WL 1698953 at * 10.  Ms. Liender admits that the hostility was generally

passive, confined to a relatively small number of people, and that her ability to perform

necessary job functions was not impeded by the treatment she received from her colleagues.  The

hostility Ms. Liender allegedly suffered is insufficient to constitute actionable retaliation.  See

Griffin, 356 F.3d at 829-30 (comments at staff meetings made over a two-month period that plaintiff was a "bad influence on the office and that she thought she knew everything . . . were not so severe and pervasive as to be actionable." (internal quotation omitted)); Speer v. Rand McNally & Co., 123 F.3d 658, 664 (7th Cir. 1997) (fact that supervisor yelled at plaintiff and made "her feel like she was not part of the work group" not actionable as retaliatory action).

B.    *Mr. Littlebrant's Memorandum*

Similarly, the circulation of Mr. Littlebrant's memorandum, although that memorandum contained a relatively harsh critique of Ms. Liender's job performance, cannot be considered a materially adverse action.  The memorandum did not impose any disciplinary penalty or otherwise alter Ms. Liender's employment status.  The memorandum amounts to nothing more than an expression of frustration and dissatisfaction with Ms. Liender's work.  Even if the memorandum could fairly be considered a threat that Body Firm would take some future negative action against Ms. Liender, the memorandum itself cannot be said to constitute an materially adverse action.  See Broderick v. Donaldson, 437 F.3d 1226, 1233-34 & n.2 (D.C. Cir. 2006) (concluding that a disciplinary memorandum that "did not affect [employee's] grade, salary, duties, or responsibilities" was not an adverse action); Cf. Cole v. Ruidoso Mun. Sch., 43 F.3d 1373, 1381 (10th Cir. 1994) (unrealized threat is not sufficient to establish adverse employment action).  Although the memorandum criticized Ms. Liender, the circulation of the memorandum did not interfere with her "unfettered access to Title VII's remedial mechanisms," Burlington, 2006 WL 1698953 at * 10.

C.    *Change in Duties*

Ms. Liender's allegation that her employment duties changed is also insufficient to preclude summary judgment.  Ms. Liender's claim is based on her allegations that Mr. Littlebrant

12

asked her to perform data entry work and that Mr. Littlebrant took away her ability to hire and

fire employees.  But Ms. Liender's claim is contradicted by her own testimony.  Ms. Liender

concedes that Mr. Peterson told her "not to do [the data entry], to keep doing the job that [she]

was doing." (Deposition of Andrea Liender, Aug. 9, 2005, 69:18-20.)  In short, even if Mr.

Littlebrant asked Ms. Liender to perform data entry duties, Ms. Liender herself concedes that the

change of duties never actually happened.  That concession reduces her claim to an assertion that

a failed attempt by her supervisor to alter her job duties constitutes a materially adverse action.

But a failed attempt to alter Mr. Liender's duties is not the type of act "likely to dissuade

employees from complaining . . . about discrimination."  Burlington, 2006 WL 1698953 at * 11.

     Ms. Liender does insist that she was actually stripped of the authority to hire and fire

individuals.  The allegation is strikingly vague in its factual details.  Ms. Liender simply states

that after she lodged her complaint in May of 2001, Mr. Littlebrant told her that he would be

doing the hiring.  (See id. at 193-94.)  The record evidence indicates that the authority to hire and

fire individuals was a relatively minor part of Ms. Liender's position.  Over the course of her

multi-year tenure with Body Firm, Ms. Liender, at best, hired only a few employees and fired

none.  When asked in her deposition to describe her job duties, Ms. Liender did not mention

hiring and firing employees, and only mentioned that authority in response to a direct question

from Body Firm's counsel.  (See Depo. Andrea Liender 61-62.)

     Even accepting Ms. Liender's allegation that she lost the ability to hire and fire

individuals as true, such a change amounted to an immaterial alteration of responsibilities that

was not significant enough in and of itself to constitute a materially adverse action.  See

Burlington, 2006 WL 1698953 at *12 (evidence supported a jury's conclusion that reassignment

from forklift operator to track labor was materially adverse because the new "duties were by all

accounts more arduous and dirtier," the new position carried less prestige, and "the forklift operator position was objectively considered a better job" (internal quotation omitted)); see also Sanchez v. Denver Pub. Sch., 164 F.3d 527, 532 (10th Cir, 1998) ("[W]e will not consider a mere inconvenience or an alteration of job responsibilities to be an adverse employment action." (internal quotation omitted)); Crady v. Liberty Nat'l Bank & Trust Co., 993 F.2d 132, 136 (7th Cir. 1993) (if material responsibilities are significantly diminished it may indicate an adverse employment action (emphasis added)).  The undisputed evidence establishes that Ms. Liender's job title, status, and responsibilities remain unchanged in all material aspects after she complained about Mr. Littlebrant.  Any change in her duties, or attempt to change her duties, was too innocuous to serve as a materially adverse action.

D.      *Ms. Aston's Phone Call*

Finally, the phone call between Ms. Aston and Ms. Liender was not a materially adverse action.  The record is clear that Ms. Liender knew that Ms. Aston was not in a position to make hiring or firing decisions and that Ms. Aston was merely expressing her opinion about the situation.

E.      *Conclusion*

Considered together, Ms. Liender's contentions establish that she her work environment became notably less pleasant after she complained about Mr. Littlebrant's behavior.  But Ms. Littlebrant has not established that she suffered any materially adverse actions that would support a retaliation claim.  Rather, the undisputed evidence establishes that Ms. Liender carried out her daily duties in largely the same manner that she always had and was not reassigned or otherwise tangibly penalized for making use of Title VII's remedial provisions.  In short, Ms. Liender has not established that she suffered any actions that would "dissuade[] a reasonable worker from

making or supporting a charge of discrimination." <u>Burlington</u>, 2006 WL 1698953 at *10.

Accordingly, Body Firm is entitled to summary judgment on Ms. Liender's retaliation claim.

## II.    Ms. Liender Was Not Constructively Discharged

"Constructive discharge occurs when the employer by its illegal discriminatory acts has

made working conditions so difficult that a reasonable person in the employee's position would

feel compelled to resign." <u>Sanchez</u>, 164 F.3d at 534.  "In determining whether an employee's

working conditions would cause such feelings in a reasonable person, [courts] apply an objective

test under which neither the employee's subjective views of the situation, nor her employer's

subjective intent with regard to discharging her, are relevant." <u>Tran v. Trustees of State Colleges</u>

<u>in Colo.</u>, 355 F.3d 1263, 1270 (10th Cir. 2004).  Constructive discharge is a difficult showing to

make.  <u>See</u> <u>Exum v. U.S. Olympic Comm.</u>, 389 F.3d 1130, 1135 (10th Cir. 2004) ("The question

is not whether working conditions at the facility were difficult or unpleasant.  Rather, Plaintiff

must show that, at the time of his resignation, his employer did not allow him the opportunity to

make a free choice regarding his employment relationship." (internal citations omitted)).

The undisputed facts of this case establish that Ms. Liender voluntarily resigned from

Body Firm and that she had the choice to remain employed at the time of her resignation.  In fact,

in his memorandum circulated on June 26, 2001, Mr. Littlebrant expressed, in conjunction with

his list of complaints about Ms. Liender's job performance, his desire that the employment

relationship with Ms. Liender be salvaged.  (<u>See</u> "Inter Office Communication," attached to

Memo. in Supp. of Mot. for Partial Summ. J. as Ex. J.)

These facts are similar to those in <u>Exum</u>, where an employee resigned "under duress and

protest" after being ordered to take an action he felt was unethical.  389 F.3d at 1133.  The

employer responded with a letter outlining alternatives to resignation.  <u>Id.</u>  The Tenth Circuit

concluded that the employee could not succeed on his constructive discharge claim because the letter from the employer established that alternatives to resigning existed.  See id. at 1135-36.  As with the letter in Exum, the memorandum circulated by Mr. Littlebrant explored, and expressed interest in, the possibility of Ms. Liender remaining at Body Firm.  Even if the circulation of the memorandum is considered as an event foreshadowing an inevitable termination, that event cannot be viewed as depriving Ms. Liender of the ability to choose to remain at Body Firm.

Here, as late as July 5, 2001, over a week following the circulation of Mr. Littlebrant's memorandum, Ms. Liender did not feel compelled to resign from her position.  On that date, Ms. Liender circulated her own memorandum in response to the memorandum authored by Mr. Littlebrant.  In her memorandum, Ms. Liender expressed her willingness and intention to remain at Body Firm.  (See Memo. from Andrea Liender, attached to Memo. in Supp. of Mot. for Partial Summ. J. as Ex. K ("I refuse to be a victim, and will continue to express my future concerns as they may arise.  I will also continue to be a valuable asset to the Gold's Gym team.").)  Nevertheless, Ms. Liender resigned just five days after circulating her own memorandum.

There is no evidence in the record indicating that Ms. Liender's situation changed in any material way between the date she announced her intention to remain at Body Firm and the date of her resignation.  The only events identified by Ms. Liender is Mr. Littlebrant's request that she perform some data entry work and the phone call from Ms. Aston, in which Ms. Aston expressed her opinion that Ms. Liender should either apologize or quit.  As already mentioned, Ms. Liender concedes that she was never required to perform the data entry work and also admits that she was well aware that Ms. Aston was not in a position to make decisions about Ms. Liender's employment status.

Accordingly, the evidence simply does not support the conclusion that Ms. Liender's

16

ability to choose whether to remain with Body Firm was effectively nullified during the five-day

period after she announced her intention to remain with the company.  See Baca v. Sklar, 398

F.3d 1210, 1217-18 (10th Cir. 2005) (concluding that an employee felt he had a choice to remain

employed after he rejected a request for his resignation and stating that, "[a]lthough his sour

relationship with Sklar may have made quitting Baca's best option, Baca has not presented a

genuine issue of material fact as to whether he had no other choice but to quit and therefore felt

compelled to resign." (internal quotation and citations omitted)).  Accordingly, Body Firm is

entitled to summary judgment on Ms. Liender's constructive discharge claim.

**III.    Ms. Allen's Claims of Disparate Treatment and Constructive Discharge Survive
         Summary Judgment**

*A.     Disparate Treatment*

To establish a prima facie case of disparate treatment on the basis of pregnancy, Ms.

Allen must show that she (1) is a member of a protected group, (2) was qualified for the position

she held, (3) suffered an adverse employment action, and (4) was replaced in the job she held.

See EEOC v. Horizon/CMS Healthcare Corp., 220 F.3d 1184, 1191-92 (10th Cir. 2000).

The first two prongs of Ms. Allen's prima facie case are essentially unchallenged.  But

Body Firm argues that it is entitled to summary judgment because Ms. Allen has failed to

establish that she suffered an adverse employment action.  According to Body Firm, Ms. Allen

voluntarily accepted a position on a data-entry task force in place of her previous position as a

salesperson.  As a result, it is Body Firm's position that Ms. Allen cannot assert that Body Firm

demoted her because she voluntarily accepted the position on the task force.

Ms. Allen testified at her deposition that when Ms. Littlebrant asked if she would be

interested in performing work for the task force, Ms. Allen replied that she would do "whatever

[she] can do to help."  (Deposition of Erin Allen, Aug. 31, 2005, 18:10-17, attached to Memo. in

17

Supp. of Mot. for Partial Summ. J. as Ex. N.)  According to Ms. Allen, Ms. Littlebrant informed

her days later that she would be starting on the task force.  During that conversation, Ms.

Littlebrant indicated that Ms. Allen's pay would remain the same.[1]  It was not until Ms. Allen

had started work on the task force that she realized that her pay would be substantially lower than

her previously guaranteed rate of $1800 per month, which she received when working as a

salesperson.  After discovering the lower rate of pay, Ms. Allen alleges that she left a letter for

Mr. Peterson outlining her belief that she had been unfairly demoted and expressing her

willingness to perform any function that would justify her previously guaranteed rate of pay.  Mr.

Peterson denies receiving that letter.  In short, the record does not establish with any certainty

that Ms. Allen knowingly and voluntarily accepted the transfer.  It is also unclear whether her

attempts to return to her previous position were rebuffed by Body Firm after she became fully

aware of the relevant facts.

Similarly, it is unclear from the record whether Body Firm hired someone to replace Ms.

Allen after she left her position on the sales team.  Ms. Allen testified in her deposition that Body

Firm did replace her after she moved to the task force.  Ms. Littlebrant testified that she was not

sure if Body Firm replaced Ms. Allen or if another salesperson was simply moved to fill the

vacancy on the morning shift, which was typically worked by Ms. Allen.  Body Firm has filed an

evidentiary challenge to Ms. Allen's testimony that she was replaced, claiming that her testimony

lacks foundation because she has no personal knowledge that she was, in fact, replaced.  But

even if Ms. Allen's testimony is disregarded, the record is still unclear on this point.  Although

Ms. Littlebrant may not have admitted that she hired a replacement for Ms. Allen, it is possible

---

[1]The evidentiary record is less than clear on this point, but Body Firm has conceded the accuracy of this statement for the purposes of its summary judgment motion. (See Reply Memo. in Supp. of Mot. for Partial Summ. J. lxi.)

that a jury could conclude that a replacement was hired.  For example, when Ms. Littlebrant was asked during her deposition if she talked with Ms. Allen about taking the assignment with the task force, she replied: "Definitely, yes, because I had to replace her.  You know, I had to have another salesperson."  (Deposition of Mary Littlebrant, Dec. 20, 2005, 30:21-25.)

In sum, there are disputed issues of material fact concerning Ms. Allen's move from the sales force to the task force and unresolved factual issues concerning her possible replacement on the sales force.  When seen in the light most favorable to Ms. Allen, a reasonable jury could find that Body Firm completely altered Ms. Allen's employment status after her pregnancy was common knowledge and after she expressed a willingness to "help out" with the task force.  The record does not clearly establish whether Ms. Allen knowingly and voluntarily consented to the complete alteration of her position with Body Firm.  Further, there is an unresolved factual question concerning whether Ms. Allen was replaced on the sales force.

B.    *Constructive Discharge*

Body Firm argues that even if Ms. Allen's disparate treatment claim survives summary judgment, her constructive discharge claim must fail.  "[C]onduct which meets the definition of a 'tangible employment action' or 'an adverse employment action' is not necessarily sufficient to establish a constructive discharge because a constructive discharge requires a showing that working conditions imposed by the employer are not only tangible or adverse, but intolerable." Tran, 355 F.3d at 1270-71.

As discussed, there are disputed facts surrounding Ms. Allen's move to the task force and it is possible that a jury could conclude that Body Firm subjected her to disparate treatment, in part because the transfer to the task force may have been a demotion.  See James v. Sears Roebuck & Co., 21 F.3d 989, 993 (10th Cir. 1994) ("A demotion or reassignment to a job with

19

lower status or lower pay may, depending on the individual facts of the case, constitute

aggravating factors that would justify a finding of constructive discharge.").

After her pregnancy became common knowledge, Ms. Allen was given new

responsibilities at a significantly lower rate of pay.  Ms. Allen testified that she complained about

the transfer as soon as she learned about her pay reduction.  According to Ms. Allen, Mr.

Littlebrant indicated that he did not think she should receive the rate of pay she received in the

past.  Ms. Allen testified that she left a letter of complaint with Mr. Peterson on May 31, 2001.

She then discussed the situation with Mr. Littlebrant on June 1, 2001.  The record establishes that

there was significant tension between Mr. Littlebrant and Ms. Allen regarding the number of

hours worked by Ms. Allen and some question concerning whether she would be able to return to

the sales force after the work of the task force was complete.  There are unresolved factual

disputes about whether Ms. Allen's hours were, in fact, deficient in some manner.  Ms. Allen left

work before the scheduled departure time on June 1, 2001.  She also traveled to the State of

Washington to attend her friend's funeral.  In both instances, Ms. Allen testified that she received

approval from her immediate supervisor, Ms. Liender.  In the later case, Ms. Allen testified that

she tried to first contact Mr. Littlebrant to seek permission to leave, but was unable to locate him.

Viewing the facts in the light most favorable to Ms. Allen, a reasonable jury could

conclude that Ms. Allen was constructively discharged before she left to attend her friend's

funeral.  A reasonable jury could conclude that Body Firm drastically altered Ms. Allen's

position at Body Firm after learning of her pregnancy.  It is undisputed that Ms. Allen's

compensation was significantly reduced and that her job duties were completely altered.  Ms.

Allen has also offered evidence that she was unfairly accused of not being punctual and not

working enough hours.  In short, there is evidence in the record to allow a reasonable jury to

conclude that Ms. Allen was constructively discharged by Body Firm.  Accordingly, Body

Firm's motion for summary judgment on this issue is denied.

**IV.    It Is Premature to Issue an Order Unequivocally Allowing or Excluding Punitive Damages in this Case**

The parties have filed cross motions for summary judgment on the question of whether

Plaintiffs can seek punitive damages in this case.  Punitive damages are available in a Title VII

action when the defendant engaged in discrimination "with malice or with reckless indifference

to the federally protected rights of an aggrieved individual."  42 U.S.C. § 1981a(b)(1).  Facts

justifying punitive damages must be proven by a preponderance of the evidence.  See Knowlton

v. Teltrust Phones, Inc,, 189 F.3d 1177, 1186 (10th Cir. 1999).

Body Firm's position is that Plaintiffs have failed to even allege facts that would support

the conclusion that Body Firm acted maliciously or with reckless indifference to the rights of its

employees.  Plaintiffs respond that the actions of Body Firm show a  pervasively cavalier

approach to sexual harassment.  Additionally, Plaintiffs place significant weight on Mr.

Peterson's alleged inaction in the face of Ms. Liender's February 2001 complaint, a fact which

Body Firm disputes.  Plaintiffs also note the confusion surrounding various versions of employee

manuals and the fact that Body Firm failed to offer formal sexual harassment training to its

employees.  According to Plaintiffs, egregious conduct is not necessarily required to support a

punitive damages claim and that the terms "malice" and "reckless indifference" do not relate to

an employer's awareness that it is engaging in discrimination, but to a "perceived risk" that "its

actions will violate federal law."  See Kolstad v. Am. Dental Ass'n, 527 U.S. 526, 536 (1999).

Body Firm argues, and is correct, that the facts of this case appear to be decidedly less

shocking than many other cases involving punitive damages.  See, e.g., Varner v. Nat'l Super

Markets, Inc., 94 F.3d 1209, 1211, 1214 (8th Cir. 1996) (punitive damages not appropriate even

though supervisor received two reports--one each from the boyfriend and the mother of the woman being harassed--about a coworker's graphic sexual comments and actions (namely, grabbing the woman's breasts); supervisor stated "that's just Bob being himself").  But there is case law suggesting that punitive damages, when the facts are viewed in the light most favorable to Plaintiffs, may be justified in this case.  See, e.g., Mathis v. Phillips Chevrolet, Inc., 269 F.3d 771, 778 (7th Cir. 2001) ("[L]eaving managers with hiring authority in ignorance of the basic features of the discrimination laws is an 'extraordinary mistake' for a company to make, and a jury can find that such an extraordinary mistake amounts to reckless indifference.").

Here, there are questions about the existence, status, and scope of Body Firm's sexual harassment policy and there is a bona fide factual dispute about whether Ms. Liender's first complaint was received by Mr. Peterson and ignored, as well as whether Mr. Peterson received the May 31, 2001 letter from Ms. Allen complaining about the reduction in her pay following the transfer to the task force.  Also, the merits of Ms. Liender's harassment claim have yet to be adjudicated.  Accordingly, the parties cross motions on this issue are denied.

**V.     Ms. Liender Is not Entitled to an Order Denying Body Firm from Relying on the Ellerth/Faragher Good-Faith Defense**

If successfully established, the Ellerth/Faragher good-faith defense forecloses the imposition of vicarious liability on an employer for the actions of its employees.  Ms. Liender argues that Body Firm should be foreclosed as a matter of law from presenting such a defense because undisputed facts establish Body Firm does not meet the prerequisites for that defense.

In situations where no tangible employment action was taken, an employer can rely on this "good faith" defense only if the employer can establish, by a preponderance of the evidence, "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of

any preventive or corrective opportunities provided by the employer to avoid harm otherwise."
Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 765 (1998).

As just discussed in relation to the cross motions addressing the appropriateness of punitive damages, there are disputed facts that are critical to determining whether Body Firm may rely on an Ellerth/Faragher defense in this case.  The elements Body Firm must establish to utilize the defense are highly factual in nature and the efficacy of the defense is properly left for the jury's determination except in only the clearest of cases.  See Thompson v. Town of Front Royal, 117 F. Supp. 2d 522, 529 (W. D. Va. 2000) ("[T]he affirmative defense places a premium on fact-intensive determinations of reasonableness of the conduct of the parties. . . . '[W]hen the reasonableness of conduct is in question, summary judgment is rarely appropriate because juries have unique competence in applying the reasonable person standard to the facts of the case.'" (quoting Lissau v. S. Food Serv., Inc., 159 F.3d 177, 184 (4th Cir. 1998)).

Accordingly, Ms. Liender's request that the court preclude Body Firm from relying on this defense is premature.  Therefore, Ms. Liender's motion for summary judgment on this issue is denied.

## VI.    The Court Is Unable to Grant Summary Judgment on the Issue of Whether "Gold's Gym of Utah" Is a Single Employer

It is undisputed that Body Firm owned only two gyms outright while Ms. Liender was employed with the company.  But Ms. Liender argues that three other gyms, and the three separate entities that owned those gyms, were so interconnected with Body Firm that they should be considered a part of Body Firm for the purposes of this lawsuit.  Body Firm responds that the three gyms to which Ms. Liender refers are owned by completely separate entities and that Body Firm merely performed management duties for those gyms as part of a management agreement.

Ms. Liender argues that the court should utilize the "single employer test" to determine

whether Body Firm and the additional entities identified by Ms. Liender were truly one

employer.  Although Body Firm points out that the "single employer test" has never been

formally adopted in this circuit, the Tenth Circuit has utilized the test on several occasions and

the court concludes that it is appropriate to utilize that test in this case.

As stated by the Tenth Circuit, courts must "weigh four factors in considering whether . .

. nominally separate entities constitute an 'integrated enterprise' or a single employer: (1)

interrelations of operations; (2) common management; (3) centralized control of labor relations;

and (4) common ownership and financial control."  Sandoval v, City of Boulder, 388 F.3d 1312,

1322 (10th Cir. 2004).  Body Firm argues that the test has no applicability to entities that exist in

a horizontal structure, as it claims is the case here, and is properly confined to the task to

determining whether a parent and subsidiary corporation effectively serve as one employer.

While the single-employer test may have originally been formulated to address parent-

subsidiary situations, the usefulness of the test is not limited to that context.  See EEOC v. Sate

of Ill., 69 F.3d 167, 171 (7th Cir. 1995) ("The principle that animates the doctrine is not limited

to the technical relation of parent to subsidiary corporation (the 'integrated enterprise')."); see

also Sandoval, 388 F.3d at 1322 (describing single employer test as a means of evaluating the

connection between "nominally separate entities," with no mention of hierarchical requirement);

Knowlton, 189 F.3d at 1184 ("[T]he heart of the inquiry is whether there is an absence of an

arm's-length relationship among the companies.").

Accordingly, the single-employer test can be applied here to determine if all five of the

gyms (and the entities that owned those gyms) should be considered a single employer for the

purposes of this lawsuit.  But as the record now stands, Ms. Liender's motion for summary

judgment on this issue cannot be granted.  Without question, Ms. Liender has gathered a

significant amount of evidence indicating a substantial degree of interrelation between the five

gyms (and the entities owning those gyms), which allegedly constituted "Gold's Gym of Utah"

during the time of Ms. Liender's employment.  For example, it appears that Body Firm

employees, including Mr. Littlebrant and Ms. Liender, performed work on behalf of all five

gyms, there was overlap in the ownership and management of the five gyms--with Body Firm

serving as a part owner of related entities, employees and equipment moved between gym

locations (though such movements were documented and tracked), the different gyms advertised

together, employee information for all five gyms was housed at Body Firm's central office, and

the five gyms used the same payroll company.

Body Firm explains these connections through reference to a management agreement.

According to Body Firm, the related entities engaged Body Firm as a manager and the

connections between Body Firm and the other entities were occasioned by Body Firm's role as

manager.  Ms. Liender argues that her attempts to discover information about the alleged

management relationship have been "thwarted" because counsel for Body Firm instructed Mr.

Peterson to not answer questions pertaining to the relationship between the entities, claiming that

such questions were outside the scope of the deposition.  (See Plf.-Intervenor's Reply Memo. in

Supp. of Mot. for Partial Summ. J. & Order Finding that the Def. and Related Entities Are a

Single Employer 7 n.2.)

Plaintiffs filed a joint-motion to reconvene Mr. Peterson's deposition.  In her briefing

before this court, Ms. Liender expresses optimism that more information concerning the alleged

management agreement may be discovered if the court allows the resumption of Mr. Peterson's

deposition.  (See id.)  The motion to reconvene Mr. Peterson's deposition was recently granted

by United States Magistrate Judge Samuel Alba.  Additional information concerning that

agreement could be critical to a resolution of whether Ms. Liender is entitled to summary

judgment on her allegation that Body Firm and the related entities are one employer.

Accordingly, Ms. Liender's motion is denied without prejudice. Should Plaintiffs

successfully augment the evidentiary record on this point, the parties are free to file summary

judgment motions on this issue.

**VII.    Motions Filed After Briefing on the Summary Judgment Motions Was Complete**

As the court noted in the introduction to this memorandum decision and order, the parties

submitted a flurry of motions to the court shortly before the hearing on the parties' various

motions for summary judgment.  Given the ruling of the court, the majority of those motions

have been rendered moot.

A.    *Body Firm's Motion to Strike Inadmissible Evidence*

After the parties briefed the summary judgment motions resolved by this order, Body

Firm filed a motion to strike certain evidence presented by Plaintiffs on various grounds.  Body

Firm also filed an ex parte motion seeking permission to file an overlength memorandum in

support of its motion to strike.  For good cause shown, the motion to file an overlength

memorandum is granted.

The court has reviewed Body Firm's motion to strike and denies that motion as moot.

The court did not rely on any of the evidence challenged by Body Firm when making its ruling.

The bulk of the evidence to which Body Firm takes exception deals with Ms. Liender's

harassment claim, an issue that is not now before the court.  While this memorandum decision

and order may mention some of the challenged evidence in passing, the court did not rely on the

substantive validity of any of the challenged evidence when making its ruling.

But one of Body Firm's challenges is worth specifically noting.  According to Body

Firm, Ms. Allen was not competent to testify concerning whether she was replaced on the sales force because she has no personal knowledge of whether she was, in fact, replaced.  The court did note Ms. Allen's belief that she was replaced when analyzing Body Firm's motion for summary judgment on Ms. Allen's disparate treatment claim.  But the court denied summary judgment on that claim because there is no clear, undisputed evidence that establishes whether Ms. Allen was replaced or not.  Accordingly, it is the province of the jury to make that determination.

B.      *Plaintiffs' Alternative Motion to Strike Declarations and for a Rule 56(f) Continuance to Respond to Motions for Summary Judgment*

On May 31, 2006, Plaintiffs moved for an order striking declarations submitted by Body Firm as exhibits to the reply memorandum Body Firm submitted in support of its motion for summary judgment.  Specifically, Plaintiffs requested that the declarations of Mr. Littlebrant, Ms. Littlebrant, Kandi Negrette, and Mr. Peterson be struck.  Because the court did not rely on those declarations when making its ruling on Body Firm's motion for summary judgment, Plaintiffs' motion is moot.

Further, the court denies Plaintiffs' request for a rule 56(f) continuance.  Plaintiffs seek an rule 56(f) continuance to respond to the "new" evidence submitted by Body Firm.  As noted, the court did not rely on any "new" evidence submitted in conjunction with Body Firm's reply brief.  Therefore, a continuance on that ground is not warranted.  Plaintiffs also request a rule 56(f) continuance to complete ongoing discovery before the court rules on pending summary judgment motions.  The court is well aware that discovery in this case has been contentious, that Judge Alba's order mandating the resumption of Mr. Littlebrant's deposition was only recently upheld by this court, and that additional discovery disputes remain pending.  Nevertheless, the court denies Plaintiffs' request for a rule 56(f) continuance.

As an initial matter, Plaintiffs filed an opposition to Body Firm's summary judgment motion and it is unclear why a rule 56(f) request was not made until after briefing on the summary judgment motion was complete.  Putting aside the allegedly "new" evidence submitted in Body Firm's reply memorandum, Plaintiffs presumably were aware of any evidentiary matters that required further investigation at the time they filed their opposition.  See Pasternak v. Lear Petroleum Exploration, Inc., 790 F.2d 828, 833 (10th Cir. 1986) ("The protection afforded by Rule 56(f) is an alternative to a response in opposition to summary judgment under 56(e) and is designed to safeguard against a premature or improvident grant of summary judgment.")

Even if the rule 56(f) request is considered timely, the court concludes that such relief is not warranted here.  The court has granted Body Firm's motion for summary judgment only with respect to Ms. Liender's retaliation and constructive discharge claims.  Plaintiffs' rule 56(f) request does not indicate that discoverable evidence exists that would alter the court's ruling on those discrete issues.  See id. (stating that rule 56(f) movant "must demonstrate 'how additional time will enable him to rebut movant's allegations of no genuine issue of fact.'" (quoting Weir v. Anaconda Co., 773 F.2d 1073, 1083 (10th Cir. 1985)).

The additional discovery identified by Plaintiffs may shed additional light on Ms. Liender's harassment claim, but Plaintiffs have not provided a sufficient indication that evidence material to Ms. Liender's retaliation and constructive discharge claim remains to be discovered.  Accordingly, the court denies Plaintiffs' request for a rule 56(f) continuance.

 C.    *Plaintiffs' Motion for Enlargement of Time to File a Declaration*

On June 1, 2006, two business days before the hearing in this matter, Plaintiffs requested additional time to file the declaration of Christie Babalis.  Plaintiffs failed to describe in any significant detail what pertinent evidence the late declaration would contain and there is nothing

to indicate that the declaration could not have been obtained and provided to the court in a timely manner.  Accordingly, the motion is denied.

D.      *Body Firm's Motion to Strike Declaration of Ashley Jensen*

On June 2, 2006, Plaintiffs filed the Declaration of Ashley Jensen.  The court did not rely on Ms. Jensen's declaration when ruling on the summary judgment motions that are the subject of this order.  Accordingly, Body Firm's motion to strike that declaration is denied as moot.

E.      *Body Firm's Motion to Strike Paragraphs 6, 7, 8, 10, 11, 12, 13 and 14 of Third Declaration of Andrea Liender*

Plaintiffs presumably submitted the third declaration of Ms. Liender in an effort to create an issue of fact concerning Ms. Liender's allegation that she lost her ability to hire and fire employees.  The court has already ruled that, even considering the facts in the light most favorable to Ms. Liender, the change of duties was not substantial enough to constitute a materially adverse action.  Accordingly, the court denies Body Firm's motion to strike certain paragraphs of Ms. Liender's third declaration as moot.

## Conclusion

For the reasons outlined above, the court:

Body Firm's Motion for Partial Summary Judgment is GRANTED in part and DENIED in part.  Specifically, Body Firm is granted summary judgment on Ms. Liender's claims of retaliation and constructive discharge, but is denied summary judgment on Ms. Allen's claims of disparate treatment and constructive discharge.  Additionally, Body Firm's request for an order holding punitive damages inapplicable to this case is denied.

Ms. Liender's Motion for Partial Summary Judgment to Eliminate the Defendant's Ellerth/Faragher Defense and for an Order for an Instruction to the Jury to Consider an Award of Punitive Damages is DENIED.

Ms. Liender's Motion for Partial Summary Judgment and Order Finding that the Defendant and Related Entities Are a Single Employer is DENIED without prejudice.

Body Firm's Motion to Strike Inadmissible Evidence is DENIED.

Body Firm's Ex Parte Motion to File Overlength Memorandum in Support of Motion to Strike Inadmissible Evidence is GRANTED.

Plaintiffs' Motion for Enlargement of Time to File a Declaration is DENIED.

Body Firm's Motion to Strike Declaration of Ashley Jensen is DENIED.

Body Firm's Motion to Strike Paragraphs 6, 7, 8, 10, 11, 12, 13 and 14 of Third Declaration of Andrea Liender is DENIED.

Plaintiffs' Alternative Motion to Strike Declarations and for a Rule 56(f) Continuance to Respond to Motions for Summary Judgment is DENIED.


SO ORDERED this 13th day of July, 2006.

BY THE COURT:

TENA CAMPBELL
United States District Judge

30